**Juan SENDEJO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Yolanda SENDEJO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–91–608–CR, 13–91–609–CR.**

Court of Appeals of Texas,
Corpus Christi.

July 30, 1992.

Rudolph G. Garza, Jr., Garza & Garza, Corpus Christi, for appellants.

Robert E. Bell, Crim. Dist. Atty., Edna, Jim Vollers, Austin, for appellee.

Before FEDERICO G. HINOJOSA, Jr., KENNEDY, and SEERDEN, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A single indictment charged appellants, acting together, with aggravated possession of marihuana. Appellants were tried together before a jury who found them guilty of possessing more than 50 but less than 200 pounds of marihuana. The trial court assessed Juan Sendejo's punishment at 30 years' confinement and a $25,000 fine and Yolanda Sendejo's punishment at ten years' confinement and a $5,000 fine. By two points of error, both appellants complain that the trial court erred in overruling their motion to suppress evidence and in not instructing the jury on the issue of illegally obtained evidence. By a separate point of error, Yolanda Sendejo complains that the evidence was insufficient to support her conviction. We affirm the trial court's judgment.

On January 8, 1991, a rainy day, Yolanda Sendejo was riding as a passenger and Juan Sendejo was driving their 1985 Oldsmobile automobile in a northerly direction on U.S. Highway 59 in Jackson County. State trooper Donald Plunkett was parked on the shoulder of the highway, working "routine traffic," when his radar clocked appellants' vehicle traveling at 63 miles per hour in a 55 mile per hour zone. Plunkett activated his overhead emergency lights and followed the Sendejos for a quarter of a mile, pacing them at 63 miles per hour. When the Sendejos did not stop their vehicle, Plunkett entered the left lane, pulled alongside them, and, using hand motions, ordered Mr. Sendejo to stop his vehicle on the shoulder. Mr. Sendejo then pulled over and stopped. Plunkett stopped behind him.

Plunkett walked to the rear of the Sendejos' car, identified himself as a state trooper, and asked Mr. Sendejo to exit the car. Plunkett met Mr. Sendejo at the rear of the car and advised him that the rain had made the road hazardous and that Plunkett had observed him speeding. It then began to rain harder, and Plunkett asked Mr. Sendejo to sit in the patrol car. Plunkett checked Mr. Sendejo's driver's license and proof of insurance card and found that the insurance card had expired. A check of the driver's license revealed no outstanding warrants. Mr. Sendejo then stated that he had a current insurance card in the glove compartment of his car. Plunkett asked him a few questions about his employment, destination, and ownership of the vehicle. Mr. Sendejo replied that he worked as a paint and body man in an auto shop, that he was going to visit a friend in Houston whose address and phone number he did not have and did not know, and that he had purchased the car with cash several months before.

Trooper Plunkett became suspicious when he noticed that Mr. Sendejo's hands were very neat and well manicured, unlike the hands of paint and body men he knew. His suspicions grew upon learning that Mr. Sendejo did not know the address or phone number of his friend in Houston. While Plunkett questioned him, Mr. Sendejo became more nervous, his eyes twitched uncontrollably, and he had difficulty swallowing.

Plunkett asked Mr. Sendejo to remain in the patrol vehicle while he went to the Oldsmobile to ask Mrs. Sendejo for the current insurance card. Plunkett approached the passenger door and knocked on the window. Mrs. Sendejo attempted to lower the passenger door window, but the power window would go down only a few inches. Plunkett identified himself and asked Mrs. Sendejo for the insurance card and her driver's license. He noticed a strong odor of fresh marihuana emitting from the car and saw one can of deodorizing spray on the seat and several door panel screws and two solid deodorizers on the floorboard. Plunkett told Mrs. Sendejo that he smelled marihuana. She then became very excited and said, "No, no, I don't smell anything."

Plunkett told Mrs. Sendejo to remain in the car. He returned to the patrol car, told Mr. Sendejo that he smelled fresh marihuana in the car and asked permission to search the car. Mr. Sendejo denied that there was any marihuana in the car. Plunkett asked Mr. Sendejo to retrieve the keys from the ignition and requested that he open the trunk of the car. Mr. Sendejo went to his car, took the keys from the ignition and opened the trunk. The trunk held a suitcase and a carrying bag and emitted a strong odor of fresh marihuana. Plunkett opened the suitcase and the bag and found 51 bundles of marihuana.

Plunkett advised Mr. Sendejo that he was under arrest and immediately handcuffed him. The arrest occurred within ten minutes after Plunkett stopped the Sendejos. Plunkett then told Mrs. Sendejo that she was also under arrest, told her to get out of the car, and handcuffed her. He called Constable Moore for assistance and advised the Sendejos of their *Miranda* rights. Constable Moore arrived and repeated the *Miranda* warnings. The Oldsmobile was impounded and the Sendejos were taken to the Jackson County jail. When Plunkett photographed the car and took inventory of its contents, he found additional packages of marihuana inside

the passenger door. A total of 108 packages of marihuana were found hidden in the trunk, doors and rear quarter panels of the Sendejos' Oldsmobile.

By their first point of error, the Sendejos complain that the trial court erred in denying their motion to suppress evidence. They argue that Plunkett detained Mr. Sendejo for an unreasonable time and questioned him about matters completely irrelevant to the traffic violation, thus exceeding the constitutional and statutory limits applicable to a traffic stop.

■■■ We disagree. Officer Plunkett had the right to stop the Sendejos for a traffic violation, regardless of his reasons. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim.App.1992). When an officer stops a motorist for a traffic violation, he has the right and the duty to demand identification, a valid license, and proof of insurance from the driver. TEX.REV.CIV.STAT.ANN. art. 6687b § 13 (Vernon Supp.1992); TEX.REV. CIV.STAT.ANN. art. 6701h § 1B(a) (Vernon Supp.1992). Plunkett stopped the Sendejos for speeding. He was completely within his authority to ask for proof of insurance and a driver's license and to check the validity of the license. Plunkett did not notice the odor of marihuana emitting from the Sendejos' car until he approached the passenger door to ask Mrs. Sendejo for the current insurance card. Plunkett did not make the traffic stop unreasonable by briefly asking Mr. Sendejo his occupation and destination. We overrule appellants' first point of error.

By their second point of error, appellants complain that the trial court erred in refusing to instruct the jury on the legality of traffic stops and probable cause to search. Appellants argue that they raised fact issues concerning the purpose and duration of the detention and concerning the speed at which the Sendejos were traveling when stopped.

■■■ The trial court must instruct the jury to disregard evidence obtained illegally if the defendant requests the instruction and raises a fact issue concerning the manner in which the evidence was obtained. *Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim.App.1986). Appellants offered no testimony at trial; they merely cross-examined Plunkett. Questions are not evidence, and Plunkett consistently responded that he observed appellants speeding, stopped appellants, requested Mr. Sendejo enter the patrol vehicle, took his driver's license, checked its validity and for outstanding warrants, and returned to the Sendejos' car for the current insurance card. Appellants raised no fact issue for the jury to decide and were properly denied a jury instruction under TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1992). We overrule appellants' second point of error.

By a third point of error, Yolanda Sendejo challenges the sufficiency of the evidence to support her conviction.[1] She argues that she was merely present in the vehicle in which the marihuana was found and that presence alone is insufficient to establish possession.

■■■ When we address a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Prophet v. State*, 815 S.W.2d 836, 837 (Tex.App.—Corpus Christi 1991, no pet.). To convict a person for possession of contraband substances, the State must prove 1) that the person exercised care, control, custody, or management over the contraband and 2) that the person knew the matter was contraband. *Martin v. State*, 753 S.W.2d 384 (Tex.Crim.App.1988); *Garza Gonzalez v. State*, 783 S.W.2d 774, 777 (Tex.App.—Corpus Christi 1990, no pet.). When an accused does not have exclusive possession of the place where the contraband is found, he may not be convicted unless the State shows additional facts and circumstances which affirmatively link the accused to the

1. While Mrs. Sendejo's point of error attacks the sufficiency of the evidence to support her conviction, she argues only that the State failed to prove any affirmative links between her and the marihuana. We limit our review of the sufficiency of the evidence to the argument advanced by Mrs. Sendejo.

contraband. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986). The trier of fact must be able to conclude from the evidence that the accused had knowledge of the contraband as well as control over it. *Martin*, 753 S.W.2d at 387. We must review each case for evidence of sufficient affirmative links by applying the general "rational trier of fact" standard. *Humason v. State*, 728 S.W.2d 363, 367 n. 12 (Tex.Crim. App.1987).

■ Mrs. Sendejo was found sitting in a vehicle that contained 108 packages of marihuana. The car emitted an odor of fresh marihuana, strong enough to overpower two solid deodorizers and one can of deodorizing spray. Mrs. Sendejo contends that the fact that a trained officer could smell marihuana is no evidence that she could; therefore, she argues, the fact that the car smelled of marihuana is insufficient to support her conviction. Mrs. Sendejo relies on *Meeks v. State*, 692 S.W.2d 504, 511–12 (Tex.Crim.App.1985).

We are not persuaded that *Meeks* controls the outcome of Mrs. Sendejo's appeal, since in *Meeks*, there was no evidence that the defendant recognized the odor or that the people in the car had taken any steps to mask the odor. By contrast, Mrs. Sendejo was found among the deodorizers, and when Plunkett told her that he smelled marihuana, she said, "No, no, I don't smell anything." Such a statement is a far cry from a statement acknowledging an odor but denying recognizing the odor. A rational jury could conclude from the fact that Mrs. Sendejo denied smelling an odor strong enough to overcome deodorizers, which sat in plain view, that she was aware the car she rode in and co-owned with the driver, her husband, contained marihuana over which she had some control. We overrule Mrs. Sendejo's third point of error.

We AFFIRM the trial court's judgments.