NO. 07-02-0342-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 14, 2003



______________________________




LUIS IGNACIO AGUIRRE, APPELLANT



V.



NORTHWEST TEXAS HEALTHCARE SYSTEM, INC. AND


UNIVERSAL HEALTH SERVICES, APPELLEES




_________________________________



FROM THE 108th DISTRICT COURT OF POTTER COUNTY;



NO. 88,725; HONORABLE ABE LOPEZ, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

OPINION


 Luis Ignacio Aguirre appeals from an order of dismissal in his suit against Northwest
Texas Healthcare Systems, Inc. We dismiss for lack of jurisdiction.

 In May, 2001, Luis Ignacio Aguirre sued Northwest Texas Healthcare Systems, Inc.,
and Universal Health Services. Northwest answered the suit on May 16, 2001. Universal
filed a Special Appearance on December 12, 2001. In due course, Northwest filed a
Motion to Dismiss, subsequently amended, by which it asserted Aguirre's alleged
noncompliance with Tex. Rev. Civ. Stat. Ann. art. 4590i (Vernon Supp. 2002). The trial
court dismissed Aguirre's claim with prejudice by order signed on July 10, 2002. The order
did not address Aguirre's claims against Universal. The order contained a Mother
Hubbard clause that "All relief requested and not expressly granted herein is DENIED." 
Aguirre's claims against Northwest were not severed from his claims against Universal. 

 Aguirre appealed the dismissal. Northwest has moved to dismiss the appeal. 
Northwest asserts that the order of July 10, 2002, is interlocutory and not appealable.

 To be a final judgment from which an appeal may be taken, the judgment must
dispose of all parties and all issues in the case. See Lehmann v. Har-Con Corp., 39
S.W.3d 191, 205 (Tex. 2001). Whether a judicial decree is a final judgment must be
determined from its language and the record in the case. Id.at 195. The inclusion of a
Mother Hubbard clause--the statement, "all relief not granted is denied," or essentially
those words-is not conclusive indication that a judgment rendered without a conventional
trial is final for purposes of appeal. Id. at 203-04. An order that disposes of claims against
one of multiple defendants does not adjudicate claims by or against other defendants. Id.
at 205. If the record reveals the existence of parties or claims not mentioned in the order,
the order is not final. Id. at 206. 

 Aguirre's claims against Universal were not addressed by the July 10th order. 
According to the record before us, those claims continue. The order from which Aguirre
appeals is not final for purposes of appeal. We do not have jurisdiction. Northwest's
motion is granted and the appeal is dismissed. See Tex. R. App. P. 42.3. 


 Per Curiam 


 



"text-align: center">_________________________________

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-409,162; HON. BRADLEY S. UNDERWOOD, PRESIDING

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
 
MEMORANDUM OPINION 
          Appellant Dwain L. Pruitt appeals from his conviction by jury of the offense of
possession of methamphetamine and his resulting sentence confining him to the State Jail
Facility of the Texas Department of Criminal Justice for a period of twenty-four months.


 
On appeal, appellant challenges the legal and factual sufficiency of the evidence to support
his conviction. We affirm.
          By indictment, appellant was charged with intentionally and knowingly possessing
methamphetamine in an amount less than one gram.


 Contrary to his plea, after the
evidence was presented, the jury found appellant guilty of the offense charged in the
indictment. Following a punishment hearing, the court assessed punishment as noted. 
Appellant timely filed notice of appeal.
Factual Background
            The State’s case was presented through the testimony of a Lubbock police officer
and the State’s chemist. Appellant presented his case through cross-examination of the
State’s witnesses. Trial testimony showed that during the early morning hours of April 25,
2005, the officer was on patrol and drove through the parking lot of a truck stop. He saw a
1982 Chevy Blazer “pulled up in-between” two semi-trailers in “a real dark part of the parking
lot.” This struck the officer as odd so he initiated a check on the Blazer’s tag and
approached it. Sleeping inside the vehicle was an individual, identified at trial as appellant. 
On the vehicle’s dashboard the officer saw two glass pipes, which he believed to be used
for smoking methamphetamine, and a small “bowl object” containing a plastic baggy. 
          The officer knocked on the window twice to awaken appellant and requested
identification. The officer testified that as he searched for his identification, appellant noticed
the glass pipes on the dashboard, casually grabbed them, and threw them onto the
floorboard on the other side of the vehicle. The officer arrested appellant and recovered the
pipes, a bag containing white residue, and a blue plastic baggy containing a white crystal
substance consistent with methamphetamine.


 The pipes


 and the blue baggy were
admitted into evidence. The Texas Department of Public Safety Crime Laboratory Division
chemist testified the substance contained methamphetamine and weighed 0.11 grams.
Applicable Law
Legal and Factual Sufficiency
          Appellant asserts through two points of error that the evidence is legally and factually
insufficient to support his conviction. Specifically, appellant contends that the chain of
custody of the evidence was broken and consequently, the evidence is tainted such that it
cannot support his conviction.
           In reviewing issues of legal sufficiency, an appellate court views the evidence in the
light most favorable to the verdict to determine whether, based on that evidence and
reasonable inference therefrom, a rational jury could have found each element of the offense
beyond a reasonable doubt. Swearingen v. State, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003);
Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), citing Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If, given all of the evidence, a rational
jury would necessarily entertain a reasonable doubt of the defendant’s guilt, due process
requires that we reverse and order a judgment of acquittal. Swearingen, 101 S.W.3d at 95,
citing Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), cert. denied, 507 U.S.
975,113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).
          A factual sufficiency review of the evidence is “barely distinguishable” from the legal
sufficiency review under Jackson v. Virginia. Marshall v. State, 210 S.W.3d 618, 625
(Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence
supporting guilt, though legally sufficient, is so weak that the jury’s verdict seems clearly
wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury’s verdict
is against the great weight and preponderance of the evidence. Id.; Watson v. State, 204
S.W.3d 404, 414-15 (Tex.Crim.App. 2006); Johnson v. State, 23 S.W.3d 1, 11
(Tex.Crim.App. 2000). In a factual sufficiency review, we again consider all the evidence,
but now in a neutral light. Marshall, 210 S.W.3d at 625; Watson, 204 S.W.3d at 414. 
Although an appellate court’s authority to review factual sufficiency permits the court to
disagree with the fact finder’s determinations, even to a limited degree those concerning the
weight and credibility of the evidence, the appellate court must accord them due deference. 
Marshall, 210 S.W.3d at 625; Johnson, 23 S.W.3d at 9. When there is a conflict in the
evidence, to find it factually insufficient we must first be able to say, with some objective
basis in the record, that the great weight and preponderance of all the evidence contradicts
the jury’s verdict. Watson, 204 S.W.3d at 417. 
AnalysisAuthentication of physical evidence requires identification by “evidence sufficient to
support a finding that the matter in question is what its proponent claims.” Tex. R. Evid.
901(a). It is within the trial court’s discretion to determine the sufficiency of the predicate. 
Smith v. State, 683 S.W.2d 393, 405 (Tex.Crim.App. 1984). Once the proponent of the
evidence meets the threshold requirement of presenting testimony that the evidence is what
the proponent says it is, the weight given to the evidence and related testimony is within the
province of the trier of fact. See Davis v. State, 992 S.W.2d 8, 11-12 (Tex.App.–Houston
[1st Dist.] 1996, no pet.).
Chain of custody is established if testimony is entered establishing that an officer
seized the evidence, tagged it, placed an identifying mark on it, placed the evidence in
storage, and retrieved it for trial. Davis, 992 S.W.2d at 10-11; Avila v. State, 18 S.W.3d 736,
739 (Tex.App.–San Antonio 2000, no pet.). For evidence sent to a laboratory for analysis,
chain of custody may be established by testimony indicating that the laboratory handled the
evidence in a manner similar to the way police properly handle evidence when the chain of
custody must be demonstrated. Avila, 18 S.W.3d at 739, citing Medellin v. State, 617
S.W.2d 229, 232 (Tex.Crim.App. 1981) (panel op.). If there is a break in the chain of
custody, even when the chain is completed into the laboratory, the evidence is still properly
before the jury for consideration unless the appellant shows that the evidence was tampered
with or altered. Montgomery v. State, 506 S.W.2d 623, 624 (Tex.Crim.App. 1974); Juhasz
v. State, 827 S.W.2d 397 (Tex.App.–Corpus Christi 1992, pet. ref’d); Gallegos v. State, 776
S.W.2d 312, 315 (Tex.App.–Houston [14th Dist.] 1989, no pet.). See Elizalde v. State, No.
05-07-00043-CR, 2008 WL 2791515 (Tex.App.–Dallas July 21, 2008, no pet.) (addressing
chain of custody in context of challenge to sufficiency of evidence). 
Appellant challenges the chain of custody of the methamphetamine. His argument
is based on statements made by the officer and the chemist during their testimony.
The officer described how he packaged the evidence he retrieved from appellant’s
vehicle. State’s exhibit 2 is a plastic bag; exhibit 4, which was marked but not offered, is a
baggy with some untested residue; and the methamphetamine in a blue baggy is exhibit 5. 
The officer testified he sealed exhibit 4 and exhibit 5 in exhibit 2 before he delivered the
items to the property room. He said he sealed the two items in exhibit 2 “separately.” On
cross examination, he elaborated during the following exchange:
Q: Did I understand you correctly in stating that these two items
that are in State’s Exhibit 2, you sealed them separately?

 
A: Yes, sir. You can tell from the seam in-between (sic) them. 
They were sealed individually.

 
Q: One on each side of what is now Exhibit 2?

 
A: Yes, sir.

 
The officer further testified that a second officer later took the sealed bag to the DPS
laboratory. Consistent with the officer’s testimony, the chemist testified to the laboratory’s
receipt of the items from the second officer. The chemist also testified to the laboratory’s
procedures for the handling of evidence submitted for testing, and to the results of his tests
on the items submitted. During cross examination of the chemist, this exchange occurred:
Q: How were [the exhibits] placed in Exhibit 2 when you
received them?

 
A: They were in the heat sealed together.

 
Q: Together, all together?

 
A: Yes.

 
From these two exchanges, appellant reasons that “[s]omewhere between [the officer]
securing and sealing [the exhibits] separately and [the chemist] receiving them at the
Department of Public Safety Laboratory, someone resealed [the exhibits] together.” He
concludes the integrity of the evidence was compromised, with the result that the evidence
is insufficient to support the judgment of conviction.

 
We cannot agree the jury was required to attach such great significance to the
wording used by the officer and the chemist. The chemist’s description of the condition of
the items is not necessarily inconsistent with the officer’s. Appellant’s argument assumes
a rational jury must have perceived that the chemist’s statement meant the seal between the
exhibits that the officer referred to had been breached when exhibit 2 was delivered to the
laboratory. The record reflects the chemist said the exhibits were “in the heat sealed
together.” Even when the chemist then agreed that the exhibits were “all together,” the jury
could have taken his statement to mean nothing more than the exhibits were contained
within the same bag, State’s exhibit 2. Further, nothing in the testimony of the officer or the
chemist suggests that exhibit 2 was opened before the chemist removed the items for
testing.

 
The officer specifically identified exhibit 5 as one of the items recovered from
appellant’s vehicle. Asked if either of the baggies had been tampered with or altered in any
way, he answered in the negative. Asked if they were in the same condition as when he
turned them in to the property room, he answered affirmatively. The chemist identified
exhibit 5 as the baggy containing the methamphetamine he tested, by his initials and the
case number on tape placed on the baggy. 

 
In addition to the exchanges cited by appellant in his brief, we note an exchange that
occurred as the officer testified concerning his opening of exhibit 2 at the time of trial. After
he said he opened the plastic bag with a pair of scissors, the record states:

 
Q: Prior to that, was that bag in the same condition other than,
as you said, being packaged somewhat different?

 
A: Yes, sir, it was.

 
Q: Has the evidence been tampered with in any way?

 
A: No, sir.

 
 
It is not clear to us what the prosecutor meant by the phrase “packaged somewhat
different.” From our review of the entirety of the testimony, however, we believe the jury
could have understood it to refer to the condition of exhibit 2 after it returned from the
laboratory, where, of course, it was opened to permit testing of the contents of exhibit 5.
To reiterate, nothing about the testimony we have quoted suggests that exhibit 2 had
been opened so that either of the baggies could have been tampered with prior to delivery
of the exhibits to the laboratory. Considering the entirety of the evidence in the light most
favorable to the verdict, we find a rational jury could have concluded beyond a reasonable
doubt that the substance the chemist found to be methamphetamine was the same as that
retrieved from appellant’s vehicle by the officer. The evidence was legally sufficient. We
further find that the evidence, considered in a neutral light, is neither so weak that the jury’s
verdict seems clearly wrong and manifestly unjust, or that evidence contrary to the verdict
is such that the jury’s verdict is against the great weight and preponderance of the evidence. 
The evidence is also factually sufficient.
Accordingly, we overrule appellant’s issues, and affirm the trial court’s judgment. 
 
James T. Campbell

Justice 

 
 
Do not publish.