NO. 07-06-0416-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 10, 2008

_____

DWAIN L. PRUITT, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-409,162; HON. BRADLEY S. UNDERWOOD, PRESIDING

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Dwain L. Pruitt appeals from his conviction by jury of the offense of possession of methamphetamine and his resulting sentence confining him to the State Jail Facility of the Texas Department of Criminal Justice for a period of twenty-four months.[1]

_____

[1] Under the Texas Health & Safety Code, a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1. Tex. Health & Safety Code Ann. § 481.115(a) (Vernon 2003). Methamphetamine falls within

On appeal, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

By indictment, appellant was charged with intentionally and knowingly possessing methamphetamine in an amount less than one gram.[2] Contrary to his plea, after the evidence was presented, the jury found appellant guilty of the offense charged in the indictment. Following a punishment hearing, the court assessed punishment as noted. Appellant timely filed notice of appeal.

Factual Background

The State's case was presented through the testimony of a Lubbock police officer and the State's chemist. Appellant presented his case through cross-examination of the State's witnesses. Trial testimony showed that during the early morning hours of April 25, 2005, the officer was on patrol and drove through the parking lot of a truck stop. He saw a 1982 Chevy Blazer "pulled up in-between" two semi-trailers in "a real dark part of the parking lot." This struck the officer as odd so he initiated a check on the Blazer's tag and approached it. Sleeping inside the vehicle was an individual, identified at trial as appellant. On the vehicle's dashboard the officer saw two glass pipes, which he believed to be used for smoking methamphetamine, and a small "bowl object" containing a plastic baggy.

___

this penalty group and possession in an amount less than one gram is a state jail felony. Tex. Health & Safety Code Ann. § 481.115(b).

[2] *See* Tex. Health & Safety Code Ann. § 481.115(a) (Vernon 2003). This is a state jail felony punishable by imprisonment in a state jail facility for any term of not more than two years or less than 180 days and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.35 (Vernon 2007).

The officer knocked on the window twice to awaken appellant and requested identification. The officer testified that as he searched for his identification, appellant noticed the glass pipes on the dashboard, casually grabbed them, and threw them onto the floorboard on the other side of the vehicle. The officer arrested appellant and recovered the pipes, a bag containing white residue, and a blue plastic baggy containing a white crystal substance consistent with methamphetamine.[3] The pipes[4] and the blue baggy were admitted into evidence. The Texas Department of Public Safety Crime Laboratory Division chemist testified the substance contained methamphetamine and weighed 0.11 grams.

## Applicable Law

*Legal and Factual Sufficiency*

Appellant asserts through two points of error that the evidence is legally and factually insufficient to support his conviction. Specifically, appellant contends that the chain of custody of the evidence was broken and consequently, the evidence is tainted such that it cannot support his conviction.

In reviewing issues of legal sufficiency, an appellate court views the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inference therefrom, a rational jury could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003);

---

[3] At trial, the officer testified that the results of a field test he conducted on this substance were positive for the presence of narcotics.

[4] The pipes actually appear to be two lengths of glass tubing.

*Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), *citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95, *citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975,113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

A factual sufficiency review of the evidence is "barely distinguishable" from the legal sufficiency review under *Jackson v. Virginia.* *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Id.; Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review, we again consider all the evidence, but now in a neutral light. *Marshall*, 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414. Although an appellate court's authority to review factual sufficiency permits the court to disagree with the fact finder's determinations, even to a limited degree those concerning the weight and credibility of the evidence, the appellate court must accord them due deference. *Marshall*, 210 S.W.3d at 625; *Johnson*, 23 S.W.3d at 9. When there is a conflict in the evidence, to find it factually insufficient we must first be able to say, with some objective basis in the record, that the great weight and preponderance of all the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417.

4

Analysis

Authentication of physical evidence requires identification by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901(a). It is within the trial court's discretion to determine the sufficiency of the predicate. *Smith v. State,* 683 S.W.2d 393, 405 (Tex.Crim.App. 1984). Once the proponent of the evidence meets the threshold requirement of presenting testimony that the evidence is what the proponent says it is, the weight given to the evidence and related testimony is within the province of the trier of fact. *See Davis v. State,* 992 S.W.2d 8, 11-12 (Tex.App.–Houston [1st Dist.] 1996, no pet.).

Chain of custody is established if testimony is entered establishing that an officer seized the evidence, tagged it, placed an identifying mark on it, placed the evidence in storage, and retrieved it for trial. *Davis,* 992 S.W.2d at 10-11; *Avila v. State,* 18 S.W.3d 736, 739 (Tex.App.–San Antonio 2000, no pet.). For evidence sent to a laboratory for analysis, chain of custody may be established by testimony indicating that the laboratory handled the evidence in a manner similar to the way police properly handle evidence when the chain of custody must be demonstrated. *Avila,* 18 S.W.3d at 739, *citing Medellin v. State,* 617 S.W.2d 229, 232 (Tex.Crim.App. 1981) (panel op.). If there is a break in the chain of custody, even when the chain is completed into the laboratory, the evidence is still properly before the jury for consideration unless the appellant shows that the evidence was tampered with or altered. *Montgomery v. State,* 506 S.W.2d 623, 624 (Tex.Crim.App. 1974); *Juhasz v. State,* 827 S.W.2d 397 (Tex.App.–Corpus Christi 1992, pet. ref'd); *Gallegos v. State,* 776 S.W.2d 312, 315 (Tex.App.–Houston [14th Dist.] 1989, no pet.). *See Elizalde v. State,* No.

5

05-07-00043-CR, 2008 WL 2791515 (Tex.App.–Dallas July 21, 2008, no pet.) (addressing chain of custody in context of challenge to sufficiency of evidence).

Appellant challenges the chain of custody of the methamphetamine. His argument is based on statements made by the officer and the chemist during their testimony.

The officer described how he packaged the evidence he retrieved from appellant's vehicle. State's exhibit 2 is a plastic bag; exhibit 4, which was marked but not offered, is a baggy with some untested residue; and the methamphetamine in a blue baggy is exhibit 5. The officer testified he sealed exhibit 4 and exhibit 5 in exhibit 2 before he delivered the items to the property room. He said he sealed the two items in exhibit 2 "separately." On cross examination, he elaborated during the following exchange:

> Q: Did I understand you correctly in stating that these two items that are in State's Exhibit 2, you sealed them separately?
>
> A: Yes, sir. You can tell from the seam in-between (sic) them. They were sealed individually.
>
> Q: One on each side of what is now Exhibit 2?
>
> A: Yes, sir.

The officer further testified that a second officer later took the sealed bag to the DPS laboratory. Consistent with the officer's testimony, the chemist testified to the laboratory's receipt of the items from the second officer. The chemist also testified to the laboratory's procedures for the handling of evidence submitted for testing, and to the results of his tests on the items submitted. During cross examination of the chemist, this exchange occurred:

6

Q: How were [the exhibits] placed in Exhibit 2 when you received them?

A: They were in the heat sealed together.

Q: Together, all together?

A: Yes.

From these two exchanges, appellant reasons that "[s]omewhere between [the officer] securing and sealing [the exhibits] separately and [the chemist] receiving them at the Department of Public Safety Laboratory, someone resealed [the exhibits] together." He concludes the integrity of the evidence was compromised, with the result that the evidence is insufficient to support the judgment of conviction.

We cannot agree the jury was required to attach such great significance to the wording used by the officer and the chemist. The chemist's description of the condition of the items is not necessarily inconsistent with the officer's. Appellant's argument assumes a rational jury must have perceived that the chemist's statement meant the seal between the exhibits that the officer referred to had been breached when exhibit 2 was delivered to the laboratory. The record reflects the chemist said the exhibits were "in the heat sealed together." Even when the chemist then agreed that the exhibits were "all together," the jury could have taken his statement to mean nothing more than the exhibits were contained within the same bag, State's exhibit 2. Further, nothing in the testimony of the officer or the chemist suggests that exhibit 2 was opened before the chemist removed the items for testing.

The officer specifically identified exhibit 5 as one of the items recovered from appellant's vehicle. Asked if either of the baggies had been tampered with or altered in any way, he answered in the negative. Asked if they were in the same condition as when he turned them in to the property room, he answered affirmatively. The chemist identified exhibit 5 as the baggy containing the methamphetamine he tested, by his initials and the case number on tape placed on the baggy.

In addition to the exchanges cited by appellant in his brief, we note an exchange that occurred as the officer testified concerning his opening of exhibit 2 at the time of trial. After he said he opened the plastic bag with a pair of scissors, the record states:

> Q: Prior to that, was that bag in the same condition other than, as you said, being packaged somewhat different?
>
> A: Yes, sir, it was.
>
> Q: Has the evidence been tampered with in any way?
>
> A: No, sir.

It is not clear to us what the prosecutor meant by the phrase "packaged somewhat different." From our review of the entirety of the testimony, however, we believe the jury could have understood it to refer to the condition of exhibit 2 after it returned from the laboratory, where, of course, it was opened to permit testing of the contents of exhibit 5.

To reiterate, nothing about the testimony we have quoted suggests that exhibit 2 had been opened so that either of the baggies could have been tampered with prior to delivery

8

of the exhibits to the laboratory. Considering the entirety of the evidence in the light most favorable to the verdict, we find a rational jury could have concluded beyond a reasonable doubt that the substance the chemist found to be methamphetamine was the same as that retrieved from appellant's vehicle by the officer. The evidence was legally sufficient. We further find that the evidence, considered in a neutral light, is neither so weak that the jury's verdict seems clearly wrong and manifestly unjust, or that evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. The evidence is also factually sufficient.

Accordingly, we overrule appellant's issues, and affirm the trial court's judgment.


James T. Campbell
Justice


Do not publish.